**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

MADELINE ALFONZO ZAMOT, ET AL.

    **Plaintiffs,**

       v.

MUNICIPALITY OF UTUADO, ET AL.,

    **Defendants.**

**CIVIL NO. 19-1209 (RAM)**

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is codefendant Ernesto Irizarry-Salvá's *Motion to Dismiss* ("*Motion*"). (Docket No. 18). Plaintiffs opposed the same and codefendant replied. (Docket Nos. 23 and 27, respectively). For the reasons set forth below, the Court **GRANTS** the *Motion*.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs are thirty-one (31) Utuado Head Start employees allegedly unlawfully terminated on June 30, 2017 due to their age, disability or perceived political affiliation to the New Progressive Party ("PNP" by its Spanish acronym). (Docket No. 1 ¶¶ 3.1-3.30).

Codefendant Ernesto Irizarry-Salvá ("Defendant" or "Irizarry-Salvá"), the mayor of the Municipality of Utuado ("the Municipality"), filed the pending *Motion* in **his personal capacity.**

(Docket No. 1 ¶ 3.33). The other codefendants are Programa Head Start – Utuado ("Utuado Head Start"), the Municipality, Mr. Irizarry-Salvá in his official capacity, his spouse Jane Doe, and the conjugal partnership between them. (Id. ¶¶ 3.31-3.35).

Head Start and Early Head Start Programs (jointly, "Head Start Program") are federally-funded education programs which aim to improve social competence and school readiness for low income children aged zero to five years old. Id. ¶ 5.2. Until 2017, program funds were granted and administered by the Department of the Family Administration for the Integral Development for Childhood (or "ACUDEN" by its Spanish Acronym). Id. ¶ 5.4. ACUDEN annually sub-awarded funds to Delegate Agencies, such as consortia, non-profits and municipalities. Id. Specifically, it supervised the Municipality's assigned funds which were used to operate the Head Start Program centers in Utuado, Adjuntas and Jayuya until June 30, 2017. Id. ¶ 5.5.

In 2017, the U.S. Government opened Puerto Rico's Head Start Program funding to competitive bidding and the Municipality submitted a proposal. Id. ¶ 5.6. Around May 23, 2017, Defendant met with Utuado Head Start employees, told them the Municipality had submitted a proposal "to run the Head Start franchise" and supposedly said that they would all keep their jobs after June 30, 2017. Id. ¶ 5.7. Around July 1, 2017, the Municipality was awarded $3,394,179.00 to operate the Head Start Program in and around

Utuado after July 1, 2017. Id. ¶ 5.8. It was no longer a Delegate
Agency and was instead funded by the U.S. Government. Id.

Defendants then allegedly used this transition from funding
source as pretext to terminate employees at Utuado Head Start. Id.
¶ 5.9. Plaintiffs posit that the lay-offs were carried out at
Defendant's request as mayor of Utuado and/or due to officially
promulgated or adopted policies. Id. Plaintiffs were told to submit
employment applications with the Municipality or Utuado Head Start
to be considered for rehire. Id. ¶ 5.10. Despite submitting the
applications, Plaintiffs were denied employment despite being
qualified to work at Utuado Head Start and allegedly having more
experiences than other candidates. Id. Instead, the employees that
kept their jobs and/or were rehired after July 1, 2017, were all
supposedly under 40 years of age and were perceived to be
affiliated with the Popular Democratic Party ("PPD" by its Spanish
acronym), the mayor's political party. Id. One employee was
purportedly terminated and not rehired because of her hearing
impairment. Id.

On March 6, 2019, Plaintiffs filed a *Complaint* seeking both
general and compensatory damages, with prejudgment interest, for
over fifteen million dollars ($15,000,000.00), punitive and
exemplary damages for over thirty million dollars ($30,000,000.00)
and attorney's fees and costs. (Docket No. 1 at 37). They also
seek nominal damages, equitable relief in the form of back pay,

special damages as to lost salary, front and back pay, bonuses and other benefits they would have been entitled to as Utuado Head Start employees. Id. Id. Finally, they seek an injunction reinstating their employment and restoring their former salaries, duties and responsibilities, and an injunction mandating the elimination of Defendants' discriminatory practices. Id. at 37-38. The remedies sought stem from multiple claims: 1) Deprivation of Civil Rights and Discrimination under 42 U.S.C. § 1983; 2) Age Discrimination in Employment Act ("ADEA") under 29 U.S.C. § 623 et seq.; 3) Discrimination on the Basis of Disability under the Americans with Disabilities Act ("ADA") under 42 U.S.C. § 12112 et seq.; 4) Discrimination in Employment on the Basis of Political Affiliation and Age under 29 L.P.R.A § 146 et seq. ("P.R. Law 100"); 5) Discrimination on the Basis of Disability under 1 L.P.R.A § 501 et seq. ("P.R. Law 44"); 6) Wrongful Termination of Employment in Violation of Public Policy; 7) Breach of Implied Contract and Promissory Estoppel, and 8) Intentional Infliction of Emotional Distress. Id. ¶¶ 6.1-13.4.

On May 15, 2019, Defendant filed the pending *Motion* stating the Section 1983 claim was time-barred and that all claims against him in his *personal* capacity should be dismissed. (Docket No. 18). Plaintiffs filed an opposition ("Opposition") alleging that the Section 1983 claim is not time-barred, that they have a First Amendment claim **and** a Fourteenth Amendment due process claim,

Defendant is individually liable under ADEA and ADA, the Puerto Rico Constitution creates a cause of action for discrimination enforceable for damages under Article 1802 of Puerto Rico's Civil Code and the state law claims should not be dismissed. (Docket No. 23). Defendant subsequently filed a reply ("Reply") (Docket No. 27).

## II.  LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Ruling upon such a motion requires determining whether "*all* the facts alleged [in the complaint], when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011). This requires treating non-conclusory factual allegations as true. *See* Nieto-Vicenty v. Valledor, 984 F. Supp. 2d 17, 20 (D.P.R. 2013). But, this is unsuitable to legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Borras-Borrero v. Corporacion del Fondo del Seguro del Estado, 2020 WL 2097553, at *4 (1st Cir. 2020) (quotation omitted).

### III. DISCUSSION

**A. Deprivation of Civil Rights and Discrimination under § 1893**

Section 1983 does not create substantive rights. *See* 42 U.S.C.A. § 1983; *see also* Baker v. McCollan, 443 U.S. 137, 145, (1979) (holding that Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."). To prevail in a Section 1983 claim, a plaintiff "must allege facts sufficient to support a determination (i) that the conduct complained of has been committed under color of state law, **and** (ii) that [it] worked a denial of rights secured by the Constitution or laws of the United States." Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005) (quotation omitted) (emphasis added). For liability purposes, a state employee acts "under color of state law when, while performing in his official capacity or exercising his official responsibilities, he abuses the position given to him by the State." West v. Atkins, 487 U.S. 42, 49 (1988). A plaintiff is also "required to plausibly establish the link between each particular defendant and the alleged violation of federal rights." Torres Lopez v. Garcia-Padilla, 209 F. Supp. 3d 448, 454-55 (D.P.R. 2016) (citation omitted). This can be achieved by showing any "personal action or inaction [by defendants] within the scope of [their] responsibilities that would make [them] personally

answerable in damages under Section 1983." <u>Id.</u> (quotation omitted). "[W]hile plaintiffs are not held to higher pleading standards in § 1983 actions, **they must plead enough for a necessary inference to be reasonably drawn**." <u>Montañez v. State Ins. Fund</u>, 91 F. Supp. 3d 291, 297 (D.P.R. 2015) (quotation omitted) (emphasis added).

**B. First Amendment Claims**

The first step in assessing Plaintiffs' due process claim under Section 1983 is to "identify the exact contours of the constitutional right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." <u>Garcia-Diaz v. Cintron-Suarez</u>, 120 F. Supp. 3d 68, 79 (D.P.R. 2015) (citation omitted). Both the First and Fourteenth Amendments protect the rights of individuals to freely associate with others "for the common advancement of political beliefs and ideas." <u>Ramirez-Nieves v. Municipality of Canovanas</u>, 2017 WL 1034689, at *7 (D.P.R. 2017) (quotation omitted). As Defendant points out in his *Reply*, Plaintiffs solely bring forth a Fourteenth Amendment violation and **do not** bring a First Amendment violation when asserting a claim pursuant to Section 1983. (Docket Nos. 1 ¶¶ 6.1-6.14; 27 at 3). Further, the record does not reflect any attempt by Plaintiffs to amend the *Complaint* to include a First Amendment violation. However, the Court will *sua sponte* briefly address any potential First Amendment claims.

The First Amendment prohibits government officials from
"taking adverse action against public employees on the basis of
political affiliation, unless political loyalty is an appropriate
requirement of employment." Ocasio-Hernandez, 640 F.3d at 13
(citing Rutan v. Republican Party of Ill., 497 U.S. 62, 75-76
(1990). Moreover, a First Amendment *prima facie* political
discrimination claim involves four elements: "(1) that the
plaintiff and defendant have opposing political affiliations, (2)
that the defendant is aware of the plaintiff's affiliation, (3)
that an adverse employment action occurred, and (4) that political
affiliation was a substantial or motivating factor for the adverse
employment action." Reyes-Orta v. Puerto Rico Highway & Transp.
Auth., 811 F.3d 67, 73 (1st Cir. 2016) (quoting Ocasio-Hernandez,
640 F.3d at 13). Here, as in Arroyo v. Rubio, "[w]ith the exception
of the adverse employment action prong, the complaint in the case
at bar is vulnerable as it is devoid of factual allegations to
meet the remaining *prima facie* steps of plaintiff's First Amendment
claim." Arroyo v. Rubio, 2011 WL 1097639, at *2 (D.P.R. 2011).

A look at the facts averred in the *Complaint* shows that
Plaintiffs only presented conclusory allegations regarding their
termination being rooted in their perceived and/or actual
affiliation with the PNP political party. For example, paragraph
6.3 of the *Complaint* avers that "Plaintiffs participated in PNP
political meetings and activities, and did volunteer work for the

PNP while off-duty from their employment at Utuado Head Start. Said participation and/or volunteer work was known by Defendant Ernesto Irizarry-Salvá and/or his subordinates in the Municipality of Utuado." (Docket No. 1 ¶ 6.3). Yet, no additional facts about a possible knowledge of the alleged volunteer work beyond the foregoing conclusory averments were provided.

The First Circuit has also explained that a plaintiff must plead "discrete factual events" to show that defendants were aware of a plaintiff's political beliefs. Ocasio-Hernandez, 640 F.3d at 14-15. Sufficient allegations may include: "(1) that a plaintiff was asked by defendants about the circumstances relating to how the plaintiff obtained his or her job; (2) that the clerical staff directly asked about a plaintiff's political affiliations; and (3) that employees knew about and frequently discussed the political affiliation of their co-workers." Albino v. Municipality of Guayanilla, 925 F. Supp. 2d 186, 194-95 (D.P.R. 2013) (citation omitted). Plaintiffs failed to include averments of discrete events such as these in their Complaint. The only plausible fact which could show a possible political discrimination under the Frist Amendment is the allegation that "[p]rior to or around the time of Plaintiffs' employment termination, several employees, officers and agents of Defendants stated that Defendants had 'a list of persons to lay off' and 'would clean house' **in an apparent reference** to Head Start employees affiliated or perceived

as affiliated to the PNP." (Docket No. 1 ¶ 4.6) (emphasis added). But, even this allegation is too weak to support a finding at this stage that Plaintiffs' termination was a direct result of their political affiliation. Let alone to support an inference that Irizarry-Salvá was aware of said list or of an attempt to "clean house." Hence, the Court "will not engage in speculation to fill the gaps of the complaint." Arroyo, 2011 WL 1097639, at *2.

The First Circuit has stated that discrimination based on a perceived affiliation instead of an actual affiliation may suffice for a First Amendment violation. See Welch v. Ciampa, 542 F.3d 927 (1st Cir.2008). However, the issue in the Welch case, unlike here, was that an employee who was not affiliated with any political party alleged that the defendants attributed to him an affiliation and retaliated against him as a result. The First Circuit then concluded that "[w]hether Welch actually affiliated himself with the anti-recall camp is not dispositive since the pro-recall camp attributed to him that affiliation." Here, Plaintiffs have failed to set forth sufficient facts which show that Defendants affiliated them with the PNP. Moreover, the District of Puerto Rico has held that "[g]enerally, conclusory allegations that one's political association is well-known will not meet a plaintiff's burden of showing that a defendant had knowledge of her political affiliation." Avilés v. Figueroa, 195 F. Supp. 3d 435, 445 (D.P.R. 2016) (citation omitted).

Similarly, when addressing claims brought pursuant to Section 1983, Plaintiffs solely averred that "Defendants knowingly and intentionally terminated Plaintiffs' employment at Head Start and refused to rehire them on the basis of their actual or perceived political affiliation with the PNP." Id. ¶ 6.6. Or that the Municipality and Utuado Head Start "terminated Plaintiffs' employment at Head Start and refused to rehire them on the basis of their actual or perceived political affiliation with the PNP at the behest of Defendant Ernesto Irizarry-Salvá and/or as a result of an officially adopted or promulgated policy." Id. ¶ 6.7. Notably, "[t]here need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action. What counts is the 'cumulative effect of the [complaint's] factual allegations.'" Medina-Velazquez v. Hernandez-Gregorat, 767 F.3d 103, 109 (1st Cir. 2014) (quoting Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013). Hence, allegations such as these, even when viewed alongside the rest of the *Complaint* in the light most favorable to Plaintiffs, are speculative at best and do not support a finding that it was Plaintiffs' alleged political affiliation which functioned as the motivating factor for Irizarry-Salvá to terminate them. The Court thus **dismisses without prejudice** any potential First Amendment claim against Irizarry-Salvá in his individual capacity.

**C. Fourteenth Amendment Claims**

The due process clause of the Fourteenth Amendment, which "prohibits a state from depriving any person of 'life, liberty, or property, without due process of law,' […] has both a substantive and a procedural component." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 879 (1st Cir. 2010) (quoting U.S Const. amend. XVI, § 1). While Plaintiffs failed to specify which type of due process claim they are pursing, the Courts **finds that Plaintiffs fail to prove a due process violation under either type**.

1. Substantive Due Process Claims

First, Irizarry-Salvá avers that Plaintiffs' substantive due process claims are superseded by a First Amendment claim. (Docket No. 18 at 7-8). The First Circuit has held that "[s]ubstantive due process is an inappropriate avenue of relief when the governmental conduct at issue is covered by a specific constitutional provision." Pagan v. Calderon, 448 F.3d 16, 33 (1st Cir. 2006). The District of Puerto Rico has further emphasized that "[i]t is the First Amendment, **not the Fourteenth Amendment**, that guards individuals against state-sponsored acts of political discrimination or retaliation." Cruz v. Puerto Rico Planning Bd., 99 F. Supp. 3d 249, 259 (2015) (quotation omitted). Moreover, when these types of allegations "are covered by the First Amendment," they cannot also "serve as a basis for a substantive due process claim." Quiles–Santiago v. Rodriguez–Diaz, 851 F.Supp.2d 411, 427

(D.P.R. 2012) (quotation omitted). Lastly, the First Circuit has explained that "'an equal protection claim alleging political discrimination merely restates a First Amendment political discrimination claim' and should only be considered under the First Amendment." Rodriguez Cardona v. Questell Alvarado, 2018 WL 3953998, at *3 (D.P.R. 2018) (quoting Uphoff Figueroa v. Alejandro, 597 F.3d 423, 430 n. 8 (1st Cir. 2010)).

It is evident that Plaintiffs' allegations about "substantive violations to Plaintiff's rights to speech, affiliation, equal treatment under the law and human dignity" arise out of allegations that "Defendants knowingly and intentionally terminated Plaintiff's employment at Head Start and refused to hire them on the basis of their actual or perceived political affiliation." (Docket No. 1 ¶¶ 4.9, 6.6). These allegations thus fall under the purview of the First Amendment, which as stated above, Plaintiffs failed to include in their *Complaint*. Most glaringly, Plaintiffs agree with Defendant's assertions regarding the lack of substantive due process when they state in their *Opposition* that "defendant correctly cites the Court [that is, the Quiles Santiago opinion] regarding substantive due process claims under the Fourteenth Amendment." (Docket No. 23 at 5). The Court therefore cannot determine from the facts averred in the *Complaint* that Plaintiffs set forth a substantive due process claim under the

Fourteenth Amendment as to Irizarry-Salvá. Thus, to the extent that such a claim was raised, it is **dismissed without prejudice**.

　　2. Procedural Due Process Claims

　　While Plaintiffs recognize they do not have a substantive due process rights claim, they still posit in their *Opposition* that their *procedural* due process claims survive dismissal. To wit, they state that Plaintiffs have "a Due Process claim that stands on its own, given the property interest in continued employment [which arises under a procedural due process claim] afforded to public employees in Puerto Rico." Id. at 6. As seen below, said claim does not fare better than its substantive counterpart.

　　The Procedural Due Process Clause of the Fourteenth Amendment protects government employees who possess a property interest in their continued public employment. *See* Cleveland Bd. of Educ. v. Loudermill*,* 470 U.S. 532, 541 (1985). Hence, a public employee cannot be deprived of said interest without due process of law. *See* Gonzalez-de Blasini v. Family Dept.*,* 377 F.3d 81, 86 (1st Cir. 2004). An employee is "**only** entitled to procedural due process if [they] can establish that the government deprived [them] of a constitutionally protected interest." Costa-Urena v. Segarra*,* 590 F.3d 18, 26 (1st Cir. 2009). To prove a successful procedural due process claim, Plaintiffs must show that: (1) they possessed a property interest, **and** (2) Defendants, acting under color of state law, deprived them of that property interest without a proper

constitutional process. *See* <u>Garcia-Diaz</u>, 120 F. Supp. 3d at 80. To evaluate whether Plaintiffs had a property interest, the Court looks to local law and the terms and conditions of the employment arrangement to determine whether there was an expectation that they would retain their employment. *See* <u>Mercado-Ruiz v. Carazo</u>, 2016 WL 1171508, at *6 (D.P.R. 2016). The expectation may "derive from a statute, a contract provision, or an officially sanctioned rule of the workplace." <u>Camacho-Morales v. Caldero</u>, 68 F. Supp. 3d 261, 292 (D.P.R. 2014) (quotation omitted). Yet, "Plaintiffs **must show more than an abstract need or desire for it, more than a unilateral expectation of it; instead, they must have a legitimate claim of entitlement to the right**." <u>Garcia-Diaz</u>, 120 F. Supp. 3d at 80 (emphasis added). If a protected property interest in their position is not shown, then any due process claim must fail. *See* <u>García-González v. Puig-Morales</u>, 761 F.3d 81, 88 (1st Cir. 2014).

Both the First Circuit and the District of Puerto Rico have held that pursuant to Puerto Rico law, transitory employees "do not have a due process interest in their employment beyond the duration of their term or appointment." *See* <u>Caro v. Aponte-Roque</u>, 878 F.2d 1, 4-5 (1st Cir. 1989) (citation omitted); *see also* <u>Garcia-Perales v. Rivera-Schatz</u>, 384 F. Supp. 3d 208, 212 (D.P.R. 2019); <u>García-Matos v. Bhatia-Gautier</u>, 156 F. Supp. 3d 245, 254 (D.P.R. 2016). This "necessarily means that a property interest exists while the appointment is alive, but when that appointment

expires there is no retention expectancy regarding that position."
Lopez-Rosado v. Molina-Rodriguez, 2012 WL 4681956, at *2 (D.P.R.
2012). Further, where "a transitory employee is discharged at the
time his transitory position expires, a mere subjective expectancy
that his employment would continue from year to year indefinitely
creates no property interest in employment." Jimenez-Gonzalez v.
Alvarez-Rubio, 2011 WL 5854897, at *5 (D.P.R. 2011) (quotation
omitted). The opposite is true under a First Amendment claim where
"non-policymaking public employees cannot be dismissed because of
their political affiliation, regardless of the transitory status
of the position." Nieves–Villanueva v. Soto–Rivera, 133 F.3d 92,
94 n. 3, 98 (1st Cir. 1997); see also Jimenez-Gonzalez, 2011 WL
5854897, at *5 ("[T]ransitory employees whose contracts are not
renewed due to political discrimination may sue for a violation of
their First Amendment rights under section 1983."). Yet, no First
Amendment claims were part of the Complaint in the present case.

In the case at bar, Plaintiffs failed to aver that they had
more than a mere subjective expectancy that their employment at
Utuado Head Start would continue past June 30, 2017. First, they
never refer to themselves in the Complaint as permanent employees
of Utuado Head Start or the Municipality. Moreover, the Complaint
establishes that Utuado Head Start, a federally-funded program,
depended on annual funds sub-awarded by ACUDEN until June 2017.
(Docket No. 1 ¶¶ 5.4-5.5). Plaintiffs state in the Complaint that

Irizarry-Salvá allegedly explained that the employees at Head Start Utuado, including Plaintiffs, would keep their jobs after June 30, 2017. Id. ¶ 5.7. They also allege they were told to submit employment applications with the Municipality or Utuado Head Start to be considered for rehire. Id. ¶ 5.10. Defendants denied in their *Answer to the Complaint* that Irizarry-Salvá stated that Plaintiffs would retain their employment. (Docket No. 17 ¶ 5.7). Instead, they averred that the Mayor told Plaintiffs that "their employment position would be open for competition and that they should be watchful to the job employment posting so they could apply and compete." Id. Regardless of what Defendant said, a mere promise that Plaintiffs would keep their jobs does not create an expectation of continued employment.

The First Circuit's Alvarado Aguilera v. Negron is instructive. *See* Alvarado Aguilera v. Negron, 509 F.3d 50, 53 (1st Cir. 2007). Therein the First Circuit, quoting the Puerto Rico Supreme Court's opinion in Dept. of Natural Res. v. Correa, stated that "[a] simple offer of a permanent position without any action on the part of the government agency clearly showing an agreement to make good on the promise cannot, by itself, give [an employee] anything beyond a unilateral expectation of job retention." Alvarado Aguilera v. Negron, 509 F.3d at 53 (quoting Dept. of Natural Res. v. Correa, 18 P.R. Offic. Trans. 795, 801 (1987)). The First Circuit, in upholding the dismissal of the complaint for

failure to allege sufficient facts to establish a constitutionally protected property interest, concluded that the holding in Correa showed "that Negrón's promise [that plaintiffs would receive permanent positions] did not give plaintiffs a legitimate claim of entitlement to a permanent government position under Puerto Rico law." Id. It further held that "[t]he agency's invitation to plaintiffs to fill out applications for permanent employment, as alleged in the complaint, did not indicate the agency's intent to make good on Negrón's promise." Id.; see also Ruiz-Roche v. Lausell, 848 F.2d 5, 8 (1st Cir. 1988) (holding that a "naked-and vague-promise" of a permanent position was insufficient under Puerto Rico law to give a plaintiff "a legitimate expectation of continued employment."). Similarly, "even if the contract had been renewed previously [which Plaintiffs do not allege here], that renewal 'does not create a property interest in the continued renewal of those contracts.'" Jimenez-Gonzalez, 2011 WL 5854897, at *5 (quotation omitted). This means that Defendant's supposed promise, without more, coupled with instructions to submit employment applications to be considered for rehire like those given in Alvarado Aguilera, fails to create a possessory interest.

A look at the facts alleged in the Complaint, even when viewed in the light most favorable to Plaintiffs, fails to show they had anything but a mere expectation of continued employment at Utuado Head Start. (Docket No. 1 at ¶ 5.10). As Plaintiffs

cannot prove the first element of a procedural due process claim,
the Court need not address the second element. *See* Garcia-Diaz,
120 F. Supp. 3d at 80. Accordingly, their Fourteenth Amendment
procedural due process claims are **dismissed without prejudice**.
Furthermore, considering that Section 1983 "is only a procedural
vehicle to vindicate constitutional" violations, and Plaintiffs
have failed to show any constitutional violations occurred, their
Section 1983 claims as to Irizarry-Salvá are also **dismissed without
prejudice**. Pagan-Garcia v. Rodríguez, 2015 WL 5084640, at *5
(D.P.R. 2015). Thus, there is no need at this time for the Court
to discuss if the Section 1983 claims are time-barred.

**D. Age Discrimination under the ADEA**

Generally, the ADEA makes it unlawful for an employee to be
discharged because of their age. *See* 29 U.S.C.A. § 623(a) ("It
shall be unlawful for an employer [...] to discharge any individual
or otherwise discriminate against any individual with respect to
his compensation, terms, conditions, or privileges of employment,
because of such individual's age."). Pursuant to said statute, a
plaintiff must establish a *prima facie* case of age discrimination
showing that they: (1) were at least forty (40) years old at the
time of the alleged adverse employment action; (2) were qualified
for the position they held; (3) suffered an adverse employment
action; and (4) the employer later filled the position, thereby
demonstrating the continuing need for those services. *See* Alicea

v. Wilkie, 2020 WL 1547064, at *9 (D.P.R. 2020), <u>reconsideration</u>
<u>denied,</u> 2020 WL 2297144 (D.P.R. 2020) (citation omitted).
Plaintiffs posit that Defendants, including Irizarry-Salvá in his
individual capacity, can be held liable for ADEA claims because
they were all over 40 years of age when they were allegedly
terminated from their job at Utuado Head Start. (Docket Nos. 1 ¶
7.1; 23 at 6-9). They also aver that the employees who retained
their jobs or who were rehired were below that age. <u>Id.</u> ¶ 7.4.

The Court need not go into the merits of the ADEA claim
because the District of Puerto Rico has **repeatedly dismissed**
**individual liability suits brought under ADEA**. *See* <u>Villamia v. MVP</u>
<u>Auto Corp.</u>, 433 F. Supp. 3d 261, 269 (D.P.R. 2020); <u>Santiago Del</u>
<u>Valle v. Metropol Hato Rey, LLC</u>, 2019 WL 3955395, at *3 (D.P.R.
2019) (dismissing Plaintiffs' claims under ADEA against a
defendant in his individual capacity and his conjugal
partnership). Moreover, while neither the United States Supreme
Court nor the First Circuit have decided if ADEA provides for
individual liability, at least one district court has found "it is
virtually impossible to imagine" that the First Circuit would find
that ADEA provides for individual liability given the similarities
between ADEA and Title VII and the fact that the First Circuit has
held that there is no individual liability under Title VII. <u>Gascard</u>
<u>v. Franklin Pierce Univ.</u>, 2015 WL 1097485, at *7 (D.N.H. 2015)
(citing <u>Fantini v. Salem State Coll.</u>, 557 F.3d 22, 30-31 (1st Cir.

2009)). Hence, Plaintiffs' ADEA claims against Defendant in his individual capacity are **dismissed without prejudice.**

**E. Discrimination on the Basis of Disability under the ADA**

The ADA forbids employers from terminating a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). It is meant "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Gray v. Cummings, 917 F.3d 1, 14 (1st Cir. 2019) (quoting 42 U.S.C. § 12101(b)(1)). A *prima facie* case of disability discrimination requires a plaintiff to show that: "(1) she was disabled within the meaning of the ADA, (2) she was a 'qualified individual,' and (3) the defendant took an adverse employment action against her on the basis of her disability." Pena v. Honeywell Int'l, Inc., 923 F.3d 18, 27 (1st Cir. 2019) (citation omitted). In the *Complaint*, Plaintiffs allege that Defendants, including Irizarry-Salvá in his individual capacity, may be found liable under ADA because Plaintiff Yeideliz Reyes-Feliciano's hearing impairment and/or disability was "a factor that made a difference in Defendants' decision to harass, mock, treat unequally and then terminate her employment." (Docket No. 1 ¶ 8.10). Defendants were allegedly aware of her impairment. Id. ¶ 8.8. The *Complaint* also posits that said Plaintiff's disability was also "a factor that made a difference in Defendants' decision not to rehire her." Id. ¶ 8.11. Irizarry-Salvá avers in his *Motion*

*in Limine* and in his *Reply* that he cannot be found individually liable under ADA, whereas Plaintiffs' *Opposition* alleges he is liable. (Docket Nos. 18 at 13-14; 23 at 9; 27 at 7-10).

The Court need not go into the merits of the ADA claim because the First Circuit, the District of Puerto Rico and multiple other Circuit Courts have held that the **ADA does not impose individual liability**. *See* Roman-Oliveras v. Puerto Rico Elec. Power Auth., 655 F.3d 43, 51-52 (1st Cir. 2011) (holding that ADA does not contemplate individual liability); Pizarro-Correa v. Puerto Rico Internal Revenue Dep't, 267 F. Supp. 3d 369, 373 (D.P.R. 2017) (quoting Cardona-Roman v. Univ. of P.R., 799 F.Supp.2d 120, 128 (D.P.R. 2011) ("Well-established precedent establishes that there is no individual liability pursuant to the ADA or Title VII. Courts within this district and sister circuits have concluded that the language of the ADA 'does not provide for individual liability, but only for employer liability.'") Given the above, Plaintiffs' ADA claims against Irizarry-Salvá in his individual capacity are **dismissed without prejudice.**

**F. Supplemental State-Law Claims**

In addition to the federal claims, Plaintiffs bring forth several state-law claims: 1) Discrimination in Employment on the Basis of Political Affiliation and Age under 29 L.P.R.A § 146 *et seq.* ("P.R Law 100"); 2) Discrimination on the Basis of Disability under 1 L.P.R.A § 501 *et seq.* ("P.R Law 44"); 3) Wrongful

Termination of Employment in Violation of Public Policy; 4) Breach of Implied Contract and Promissory Estoppel, and 5) Intentional Infliction of Emotional Distress. (Docket No. 1 ¶¶ 9.1-13.4). The final three claims are brought pursuant to Article II, Section 1 of the Puerto Rico Constitution and Articles 1802 and 1803 of Puerto Rico Civil Code, P.R. Laws Ann. Tit. 31, §§ 5141-5142.

First Circuit case law is clear that if federal claims are properly dismissed, then a District Court is well within its discretion to decline to exercise supplemental jurisdiction over pending state-law claims. *See* Massó-Torrellas v. Municipality of Toa Alta, 845 F.3d 461, 469-70 (1st Cir. 2017); *see also*, Rivera-Diaz v. Humana Ins. of Puerto Rico, Inc., 748 F.3d 387, 392 (1st Cir. 2014) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, (1988)) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors [...] will point toward declining to exercise jurisdiction over the remaining state-law claims."); Pagan-Porratta v. Municipality of Guaynabo, 2019 WL 4055133, at *14 (D.P.R. 2019), reconsideration denied, 2019 WL 5309410 (D.P.R. 2019). Since all of Plaintiffs' federal claims as to Irizarry-Salvá in his individual capacity have been dismissed and no other grounds for jurisdiction exist, all supplemental claims under P.R. Law 44, P.R. Law 100, P.R. Laws Ann. tit. 31, §§ 5141-5142, and Article II, Section 1 of the Puerto Rico Constitution, are hereby **dismissed without prejudice.**

**G. Other Parties Facing Dismissal**

In the *Complaint*, Plaintiffs also brought forth claims against Irizarry-Salvá in his official capacity as Mayor and final policymaker for the Municipality. (Docket No. 1 ¶ 33). However, the District Court of Puerto Rico has held that "[w]hen a municipality is sued directly, claims against municipal employees in their official capacities are redundant and may be dismissed." Diaz-Garcia v. Surillo-Ruiz, 2014 WL 4403363 at *5 (D.P.R. 2014); *see also* Decotiis v. Whittemore*,* 635 F.3d 22, 26, 38 (1st Cir. 2011) (upholding dismissal of official-capacity defendant as redundant of the suit against local government agency). The Supreme Court reached a similar conclusion over two decades ago in Kentucky v. Graham where it stated that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, local government units can be sued directly for damages and injunctive or declaratory relief"). Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) (citing Monell v. Dep't. of Soc. Servs. of N.Y., 436 U.S. 658 (1978)).

Plaintiffs failed to explain how the relief that they may obtain from their claims against Irizarry-Salvá in his official capacity is different from what they may obtain through their claims against the Municipality of Utuado. Thus, this court *sua sponte* finds that the claims against Irizarry-Salvá **in his official capacity** are also **dismissed without prejudice**. *See e.g.*, Rosario

Ramos v. Municipality of Rio Grande, 2019 WL 948359, at *3 (D.P.R. 2019) (dismissing claims against the mayor and other defendants in their official capacities for similar reasons).

The Court likewise dismisses the present suit against Defendant's spouse, Jane Doe, and conjugal partnership between them. Irizarry-Salvá's spouse and conjugal partnership only appear a few times in the *Complaint* as named parties. (Docket No. 1 ¶¶ 3.4-3.5). Moreover, the *Complaint* fails to allege any specific factual allegations as to why Defendant's spouse and/or the conjugal partnership between them is liable for Plaintiffs termination. Hence, the Court *sua sponte* **dismisses without prejudice** the Section 1983 claims and any other claims as to Defendant's spouse and the conjugal partnership between them. *See e.g.*, Falcon-Cuevas v. Puerto Rico Ports Auth., 951 F. Supp. 2d 267, 279 (D.P.R. 2013) (holding that even though only one of the Defendants brought the pending *Motion to Dismiss*, "the Court finds *sua sponte* that plaintiff Falcon's Fifth Amendment and Equal Protection claims against the remaining defendants [other defendant, defendants' spouses and their respective conjugal partnerships] fail for the same reasons as those claims brought against defendant Casillas.")

### IV.   CONCLUSION

For reasons set forth above, the Court **GRANTS** codefendant's *Motion to Dismiss* (Docket No. 18) **dismissing without prejudice** all

of Plaintiffs' claims as to codefendant Irizarry-Salvá, both in his individual and official capacities, his spouse Jane Doe and the conjugal partnership between them.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 6th day of August 2020.

S/ RAÚL M. ARIAS-MARXUACH_____
United States District Judge